FILED
2014 Apr-03 PM 12:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| BENNY STEWART, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No. 5:12-cv-03644-HGD |
| ) | |
| ALLSTATE INDEMNITY ) | |
| COMPANY, ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant. (Doc. 20). The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c), Fed.R.Civ.P. 73 and LR 73.2.

Plaintiff, Benny Stewart, commenced this action by filing a complaint against Allstate Indemnity Company (Allstate) in the Circuit Court of Lawrence County. The action was removed to this court by Allstate on the basis of diversity of citizenship and amount in controversy. In his complaint, Mr. Stewart alleges that he owns property at 574 County Road 297 in Hillsboro, Alabama, and that his residence was

insured by a homeowner's policy issued by Allstate. In Spring 2011, plaintiff sustained damage to his property and submitted a claim for insurance policy proceeds to Allstate. Plaintiff avers that on or about August 1, 2011, Allstate sent adjusters to perform an estimate of the cost of repair. However, plaintiff alleges that the estimate failed to address a majority of the damage, and the payment tendered to plaintiff was inadequate to repair the property. Plaintiff avers he then contacted Allstate to dispute the adequacy of the payment and provided Allstate with a more accurate estimate of the damage sustained, but Allstate refused further action. Plaintiff asserts causes of action for breach of contract and bad faith. (Doc. 1-1, Complaint).

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (Dec. 2010). Rule 56(c) provides:

> (1) **Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

>    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) **Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) **Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) **Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c) (Dec. 2010).

Defendant, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). A genuine issue of material fact is shown when the nonmoving party produces evidence so that a reasonable

factfinder could return a verdict in his favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. Rule 56(e), Fed.R.Civ.P., provides that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it. . . ." Fed.R.Civ.P. 56(e)(2) and (3). In reviewing whether the non-moving party has met his/her burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Tipton v. Bergrohr GMBH-Siegen*, 965 F .2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted). However, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). A "mere scintilla of evidence" in support of the non-moving party also cannot overcome a motion for summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

In this case, Allstate submitted evidence in support of its motion for summary judgment filed September 6, 2013. (*See* Doc. 20). Under Appendix II to the court's an Initial Order Governing All Further Proceedings (Doc. 4), plaintiff had until September 27, 2013, to file a response to the summary judgment motion. No response was filed by the due date. Plaintiff attempted to file a response to the summary judgment motion on January 24, 2014, but the response was stricken as untimely. (*See* Doc. 29, Order). Therefore, for purposes of the motion for summary judgment, the evidence of the defendant is undisputed.

## FACTUAL BACKGROUND

Plaintiff's residence is located at 574 County Road 297, Hillsboro, Alabama. Allstate insured the subject property under a homeowner's policy of insurance. (Doc. 20-2, Certified Copy of Allstate Policy). The residence was damaged by a tornado.

On or about April 29, 2011, plaintiff reported the damage to Allstate and made a claim. (Doc. 20-3, Allstate Claim History Report, at Stewart 0134). At that time, Allstate advised plaintiff of the name and contact information of the outside adjuster who would be responsible for inspecting the property, Robert Stevenson. (*Id.* at Stewart 0136).

On May 6, 2011, Allstate completed an inspection of plaintiff's property and determined that a follow-up inspection was needed to determine the structural soundness of the dwelling. (*Id.* at Stewart 0138, Stewart 0140). Therefore, Allstate requested an independent professional engineer to inspect the property and provided a $5,000 advance to plaintiff for living expenses. (*Id.*; Doc. 20-4, Check for Additional Living Expenses). On May 14, 2011, Allstate updated plaintiff on the status of his claim and reminded him that an engineer would be inspecting his property to determine if the home would be classified as a total loss. (Doc. 20-3 at Stewart 0144). A few days later, Allstate received plaintiff's contents list and repair estimates for the items being reported as damaged and/or destroyed. (Doc. 20-5, Plaintiff's Contents List).

On May 23, 2011, Professional Engineer Bob Mott advised Allstate that plaintiff's home was irreparable. (Doc. 20-6, Engineering Report Prepared by Compton Engineering). Upon receipt of this report, Allstate issued a check to plaintiff in the amount of policy limits for the subject dwelling and other structures, totaling $186,616. (Doc. 20-7, Payments for "Dwelling" and "Other Structures").

On June 8, 2011, Allstate advised Mr. Stewart that additional information was needed on a number of the personal property items previously submitted. (Doc. 20-3 at Stewart 0160). Allstate requested either photographs, serial numbers, model

numbers or brand names to help identify these items. (*Id.*). At the same time, Allstate inside adjuster, Valorie Harris, contacted Tri-Green Equipment to gather more information on the three damaged tractors reported by plaintiff.[1] (*Id.*).

On June 9, 2011, plaintiff advised Ms. Harris that a number of the personal property items being claimed were used for business purposes. (Doc. 20-8, Harris Depo., at 21-22; Doc. 20-3 at Stewart 0161). Mr. Stewart identified each of the items from his previously submitted contents list which he used for business purposes. (Doc. 20-8, Harris Depo., at 66-67). Later that afternoon, Ms. Harris' manager, Dorothy Reed, followed up with Mr. Stewart on the personal property claim and learned that he raised cattle for the purpose of selling the calves. Again, plaintiff named each of the claimed items, including the tractors, which were used for business purposes. (Doc. 20-3 at Stewart 0161). At that time, Ms. Reed informed Mr. Stewart of the coverage limitation of $2000 for items "used or intended for use in a business." (*Id.*; Doc. 20-8, Harris Depo., at 67-68).

Plaintiff's policy of insurance contained the following limitation on certain personal property:

> Limitations apply to the following groups of personal property. If personal property can reasonably be

---

[1] The repair estimate for the three damaged tractors provided by plaintiff was from Tri-Green Equipment and totaled $24,018.24. (Doc. 20-9, Repair Estimates from Tri-Green Equipment).

> considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Coverage C-Personal Property Protection.** The total amount of coverage for each group in any one loss is as follows.
>
> > 3. $2,000 - Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the premises.

(Doc. 20-2, Certified Copy of Allstate Policy, at Stewart 0023) (emphasis added).

Immediately after being advised of the business property limitation and in direct contradiction to his previous statements, plaintiff retracted his prior comments and stated that he sold cattle as a hobby. (Doc. 20-3 at Stewart 0161; Doc. 20-8, Harris Depo., at 68). At the conclusion of the call, plaintiff was advised that the business limit would apply to any items "used or intended for use in a business" but that he would receive full payment for his other personal property items. (Doc. 20-3 at Stewart 0161). The claim was then transferred to Allstate's Special Investigative Unit (SIU) for further investigation as a result of plaintiff's inconsistent statements concerning his personal property claim. (*Id.* at Stewart 0165).

On June 14, 2011, SIU adjuster Jim Neno contacted Mr. Stewart to explain his role in the claim and take a recorded statement. (*Id.* at Stewart 0170). Mr. Neno informed plaintiff that he was assigned to the claim as a result of plaintiff's

inconsistent statements concerning personal property items. (*Id.*). During the recorded statement, Neno inquired about the use of several items included on plaintiff's previously submitted contents list. (Doc. 20-11, Recorded statement taken by James Neno, at 2-8). Plaintiff advised that the hayrack was used to harvest between 65 and 70 acres of hay located on his son's property and that this hay was then used as feed for the cattle on his son's farm.[2] (*Id.* at 3). Plaintiff informed Allstate that he used the three tractors on his son's farm to avoid the necessity of his son having to buy the same equipment. (*Id.* at 6).

The following day, plaintiff informed Allstate that he had retained counsel and provided a letter of representation from attorney James A. Cook, Jr. (Doc. 20-12, Letter of Representation). On June 24, 2011, Neno sent correspondence to Mr. Cook requesting that Mr. Stewart provide any paperwork that would support his purchase and ownership of the equipment claimed, that he provide copies of his tax returns for the past three years, and that he explain the FEIN[3] which was registered as issued to Mr. Stewart for the purpose of a "beef cattle" business. (Doc. 20-13, Correspondence from James Neno).

---

[2] Plaintiff has provided sworn testimony that his son operates a business for the purposes of selling calves and incorporated as Stewart Farms II, LLC on the property adjacent to his home. (Doc. 20-10, Stewart Depo., at 14-17).

[3] "FEIN" stands for Federal Employer Identification Number and is issued to any company to identify the company for tax and legal purposes.

When he received no response, Mr. Neno again sent correspondence to Mr. Cook on July 6, 2011, and requested the same information. (Doc. 20-14, Correspondence from James Neno). On or about July 14, 2011, Mr. Neno sent a letter to plaintiff setting out his responsibilities under the insurance contract following a loss. (Doc. 20-15, Correspondence from James Neno to Plaintiff). These responsibilities included submitting to an examination under oath and providing requested documentation in the investigation of the claim. (*Id.*; Doc. 20-2, Certified Copy of Allstate Policy, at Stewart 0030).

On or about July 21, 2011, Allstate retained the services of Alabama licensed attorney, Mark Hart, to assist in the claim investigation and to conduct an Examination Under Oath (EUO) of Mr. Stewart. (Doc. 20-3 at Stewart 0182). On August 2, 2011, Mr. Hart sent correspondence informing plaintiff/plaintiff's counsel that he had been retained by Allstate to help complete the investigation of plaintiff's personal property claim. (Doc. 20-16, Correspondence from Mark Hart). Specifically, plaintiff was informed that he would need to sit for an EUO on August 18, 2011, and provide the documentation which previously had been requested by Allstate. (*Id.*).

On or about August 10, 2011, Allstate was advised that plaintiff needed to reschedule the examination under oath which had been set for August 18, 2011.

(Doc. 20-3 at Stewart 0186; Doc. 20-17, Correspondence from James A. Cook, Jr., to Benny and Kathy Stewart dated August 22, 2011).[4]  On or about August 17, 2011, Mr. Cook advised Allstate that his client was reluctant to sit for an examination under oath and was considering withdrawing his personal property claim.  (Doc. 20-3 at Stewart 0187).

On August 24, 2011, Mr. Hart sent a letter to Mr. Cook requesting dates for plaintiff's EUO and that plaintiff provide the documents which previously had been requested by Allstate.  (Doc. 20-18, Correspondence from Mark Hart).  When he received no response, Mr. Hart sent correspondence to Mr. Cook scheduling plaintiff"s EUO for September 19, 2011.  (Doc. 20-19, Correspondence from Mark Hart).  On September 16, 2011, Mr. Cook informed Allstate's attorney, Mr. Hart, that he was trying to convince Mr. Stewart to submit to the previously requested examination under oath.  In addition, Mr. Cook stated that he had made Mr. Stewart aware that his claim could be denied if he failed to satisfy his obligations under the contract.  (Doc. 20-3 at Stewart 0189).  Following this conversation, Allstate agreed

---

[4] The court notes that in the letter to Mr. and Mrs. Stewart, Mr. Cook advised them that if they wished to pursue the claim further, they would need to associate Alabama counsel because he was not licensed to practice law in Alabama.  Mr. Cook stated he would discuss everything he knew with any Alabama attorney they hired and asked the Stewarts to contact him to discuss their preferred course of action.

to a two-week extension for plaintiff to sit for the EUO, and the EUO was set for October 7, 2011. (*Id.* at Stewart 0189; Doc. 20-20, Correspondence from Mark Hart).

On October 7, 2011, Mr. Stewart failed to appear for his examination under oath. (Doc. 20-21, Coverage Opinion provided by Mark Hart). Thereafter, Mr. Hart issued his coverage opinion recommending the denial of plaintiff's personal property claim, based on his breach of the condition precedent of the policy of sitting for an EUO and providing requested documentation and substantial evidence that Mr. Stewart intentionally made a material misrepresentation that the tractors were not used for business purposes. (*Id.*).

Allstate ultimately followed the recommendation of Mr. Hart and denied plaintiff's personal property claim on or about October 12, 2011, for the reasons set out in Mr. Hart's recommendation letter. (Doc. 20-22, Denial Letter). On August 22, 2012, Allstate received a demand letter from attorney Christopher Leavitt, asking that Allstate pay for the three tractors and attaching the Tri-Green Equipment estimate. (Doc. 20-23, Correspondence from Christopher Leavitt). Allstate responded on August 24, 2012, stating that it would not be addressing plaintiff's contents claim for the reasons previously set out in the October 12, 2011, denial letter. (Doc. 20-24, Correspondence from Linda Berghult). Plaintiff then filed this action on September 20, 2012.

## DISCUSSION

**<u>Breach of Contract</u>**

Plaintiff alleges that Allstate breached its insurance contract with plaintiff by "failing to pay amounts due and owing under the policy for structural damage to the Plaintiff's above-described property and failing to address the damage noted in the independent estimate." (Doc. 1-1, Complaint, at ¶ 17). With respect to the claim for damage to the residence and its contents, plaintiff claims that Allstate "failed to address the majority of the damage sustained to the home and the payment issued thereon was inadequate to repair the property." (*Id.* at ¶ 11).

In order to establish a breach-of-contract claim, a plaintiff must show "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's non-performance, and (4) damages." *Ex parte Alfa Mut. Ins. Co.*, 799 So.2d 957, 962 (Ala. 2001) (citation omitted); *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999) (citation omitted).

It is undisputed that there was a valid contract between plaintiff and Allstate. (*See* Doc. 20-2). However, plaintiff has not performed under the contract and cannot establish non-performance by Allstate when the conditions precedent to trigger such coverage were never satisfied. An insurance company is entitled to require its insured to provide documentation supporting a claim during the investigation process. *See,*

*e.g., State Farm Fire & Cas. Co. v. Richardson*, 2008 WL 4531765 (S.D.Ala. Oct. 9, 2008) (State Farm policy "obligated Richardson to cooperate with State Farm's investigation by, among other things, providing records and documents to State Farm upon request."). Furthermore, an insurer's "obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims." *United Ins. Co. of America v. Cope*, 630 So.2d 407, 411 (Ala. 1993). The Alabama Supreme Court stated that "no case from this Court places on an insurance company an obligation to either investigate or pay a claim until the insured has complied with all of the terms of the contract with respect to submitting claims for payment." *Id.* at 412. "Courts must enforce insurance contracts as written and cannot defeat express provisions in a policy." *Shrader v. Employers Mut. Cas. Co.*, 907 So.2d 1026, 1034 (Ala. 2005).

The Allstate policy at issue contains the following provisions regarding the insured's duties following a loss:

> **Insuring Agreement**
>
> **Section I Conditions**
>
> 3.  **What You Must Do After A Loss**
>     In the event of a loss to any property that may be covered by this policy, **you** must:
>     \* \* \* \* \*

  d)  give us all accounting records, bills, invoices and other vouchers, or certified copies, which we may request to examine an permit us to make copies.

* * * * *

  f)  as often as **we** reasonably require:

* * * * *

  2)  at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.

(Doc. 20-2 at Stewart 0030) (emphasis added).

  In *Nationwide Ins. Co. v. Nilsen*, 745 So.2d 264, 266-67 (Ala. 1998), the Alabama Supreme Court held that submitting to an examination under oath was a condition precedent to an insured's recovery under the policy, where the policy contained an express provision that the insured submit to an examination under oath at the request of the insurer. The wording of the policy in *Nilsen* is very similar to the policy at issue. Further, Nationwide made numerous requests that Nilsen appear for an Examination Under Oath and that he provide a signed, sworn proof of loss that set forth, among other things, receipts for additional living expenses and records supporting the calculation of fair-rental-value loss pursuant to the terms of the policy. Although numerous requests were made, Nilsen failed to submit to an Examination

Under Oath and failed to provide the requested documentation. The Alabama Supreme Court stated:

> An insurance company is entitled to require an insured to submit to an examination under oath as part of its claims investigation process. *See Payne v. Nationwide Mut. Ins. Co.*, 456 So.2d 34, 37 (Ala. 1984). Moreover, an insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims. *See United Ins. Co. of America v. Cope*, 630 So.2d 407, 411 (Ala. 1993).

*Id.* at 267. It therefore found that Nationwide did not breach its contract of insurance by failing to pay Nilsen's claim. *Id.* at 269.

It is undisputed that Allstate made numerous requests for plaintiff to appear for an examination under oath and provide requested documentation concerning his personal property claim. Plaintiff failed to comply with these conditions precedent of the insurance contract. Once plaintiff obtained counsel, Allstate was obligated to communicate through Mr. Cook. Allstate's counsel sent numerous letters to Mr. Cook and talked with him by telephone. Mr. Cook advised that plaintiff was reluctant to sit for the EUO. On September 16, 2011, Mr. Cook informed Mr. Hart that he was trying to convince Mr. Stewart to submit to the previously requested EUO. In addition, Mr. Cook stated that he had made Mr. Stewart aware that his claim could be denied if he failed to satisfy his obligations under the contract. Despite the

August 22, 2011, letter from Mr. Cook to the Stewarts advising that they would have to obtain Alabama counsel, there is no evidence that Mr. Cook communicated this to Allstate or ever advised Allstate that he was no longer representing Mr. Stewart. Further, plaintiff never advised Allstate that Mr. Cook was no longer representing him or that he had retained other counsel with whom Allstate should communicate until after Allstate had denied his claim.

Plaintiff's failure to comply with material terms of the insurance contract is a breach of his obligations following a loss. Alabama courts have held the policy provisions relied upon by Allstate to deny the claim are valid and enforceable, and any duty Allstate may have owed to pay the claim for the damage to the tractors did not arise until Mr. Stewart complied with these terms and conditions.

Plaintiff also has claimed that Allstate failed to pay him enough to repair his residence. However, Allstate paid plaintiff policy limits for the damage to his residence and its contents after determining that the house could not be repaired. It cannot be obligated to pay any more than the policy requires it to pay. *See Farr v. Gulf Agency*, 74 So.3d 393 (Ala. 2011) (finding no breach of contract when insurer paid policy limits in absence of any evidence that policy limits had been increased).

**Bad Faith**

Plaintiff alleges that Allstate exercised bad faith by intentionally refusing to pay plaintiff's claim in full despite knowing it had no arguable reason to deny benefits under the policy. (Doc. 1-1, Complaint, at ¶¶ 20-25).

In order to prevail on a bad-faith failure to pay an insured's claim, the insured has the burden of proving

> (a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); [and] (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; . . . .

*National Sec. Fire & Cas. Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982). *See also State Farm Fire and Cas. Co. v. Brechbill*, 2013 WL 5394444 (Ala. Sept. 27, 2013) (same); *Alfa Mut. Fire Ins. Co. v. Thomas*, 738 So.2d 815, 822 (Ala. 1999) (same). A "debatable reason" means "an arguable reason, one that is open to dispute or question." *Bowen, supra.*

The evidence is undisputed that Allstate undertook a thorough investigation and hired a professional engineer to complete an inspection and assess the damages to plaintiff's home prior to reaching its claim decision. It paid plaintiff for living expenses and paid policy limits for the residence and its contents. Allstate also

sought documentation from plaintiff to substantiate his claim for the damage to the tractors and conducted further investigation when plaintiff made inconsistent statements regarding whether the tractors were used for personal or business purposes. It attempted to obtain further documentation from plaintiff and schedule an examination under oath on numerous occasions. When plaintiff failed to appear for the EUO, it denied his claim on the basis of his failure to submit the requested documentation and sit for an EUO, as well as for his apparent misrepresentation, based on the unexplained inconsistencies in plaintiff's statements about the use of the tractors. As discussed above, Allstate did not breach its insurance contract with plaintiff. Therefore, plaintiff cannot satisfy the elements of a cause of action for bad faith refusal to pay a claim. Further, Allstate also had a "reasonably legitimate or arguable reason" for refusing to pay plaintiff's claim for the damage to his tractors, and plaintiff has presented no evidence that Allstate lacked a debatable reason or that it had actual knowledge of the absence of any legitimate or arguable reason for refusing to pay his claim.

## Conclusion

Based on the foregoing, the court finds that defendant's motion for summary judgment is due to be granted as to all claims asserted by plaintiff and this action dismissed with prejudice.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 3rd day of April, 2014.

                                HARWELL G. DAVIS, III
                         UNITED STATES MAGISTRATE JUDGE